May it please the court, my name is Taylor Young and I represent the claimants, appellants, Ladislao Samaniego and Manuel Castro in this appeal. The issue in this appeal is whether or not the summary judgment record below contains evidence to demonstrate that the claimants had a colorable interest in the property, the two bank accounts and the funds seized therein. We submit that we did fully demonstrate that they had a colorable interest. The standard to as to showing colorable interest, possessory interest is a better argument for you than ownership isn't it? Possessory interest is a better argument but we think we established it under both. We think we've established an ownership interest in that we have made a claim for ownership interest. But it's not unequivocal so I think possessory interest is a much better argument for you so going to that The evidence that we had a possessory interest in the funds is not only that we had the title of the funds, we had the title of the accounts, the account, the fact that the accounts are in our name establishes possession right there. We also had a, we also had exercise of dominion and control over the accounts not only were Mr. Samiego and Mr. Castro's signatories and the only signatories to the accounts but the exercise control. They made the deposits personally. There's evidence in the record that there was a debit account, debit made off of the account in Mr. Castro's name and they had deposited these funds in this account over a series of these three months. Does it matter to the Well we think that it doesn't and to say not to suggest that well because of summary judgment standard and so a resolution of the of any contradiction that one might see in the record you have to take all inferences and in favor of the non-movements and here the non-movements are my clients but also the contradictions are explained and that's one of the real problems with the government's case and what the district court did here is this supposed contradictions have to do with identifying the source of these funds versus identifying an ownership of the funds. Counsel let me ask you this just as a practical matter. Why didn't Frutaria and the godfather if you will, you call them a compadre, why didn't the compadre sign a document saying these are my or this is the company's funds? There was nothing like that here that would have solved everything. He didn't sign a document saying which company's funds your honor. Well the story was that the one of your clients was a 15% owner I think it was in the Frutaria or whichever whichever one it was one of the companies and he was taking the money I'm gonna hold it for this compadre and basically they were acting as agents that was his original story and if that was correct why why isn't there a document? Well there is there's a declaration from Mr. Salas about the ownership of the funds. I understand that. Where's the declaration? These are the company monies or these are my money. Well let me let me let me correct the record a little bit here so we can Mr. Samaniego's never claimed to be an owner of Welton. Mr. Samaniego is an owner of CSC. Okay. CSC is the company that manages and collects all of these funds from all the Welton stores. So what what Mr. Salas said in his declaration is yes these are these funds originate in Welton they go to CSC he declared that and his sworn testimony or sworn affidavit is that the once these monies get to CSC title possession full discretion is given to CSC to hold these funds eventually they have to be returned on demand but CSC can do with them basically what they will and there's an advantage to that the government made a point of saying this is a essentially a contract without any consideration but that's not true. Picking up all of these funds from the Welton stores and processing it and counting it is a huge benefit to Welton and having those dollars on hand CSC is a is a currency exchange company having all those dollars on hands is a tremendous benefit to CSC. The arrangement under the under Salas's declaration and also Mr. Samaniego's testimony was that CSC gets to use the funds as they see as they see fit any interest or profit that they might gain through the use of those funds CSC gets to retain. But this gets back to what my colleague asked you got your client making different statements at one time they say they own it the other time they say no no we're just agents in effect how do we reconcile that? Well I think it's easy to reconcile I think it's a fact question that needs to be reconciled and on a summary judgment standard I don't think we can get there what I think the trial court overlooked is the original statements from Mr. Samaniego regarding the ownership of the funds or referring to the funds as the Welton funds had to do with the source of the funds and I think it's important to understand the context here he got a notice that his account had been seized and he was told by the bank that he needed to talk to somebody at the DEA he then calls the number that the bank gives him and he's talking to Phoenix PD he doesn't know he's talking to Phoenix PD he thinks that there's some drug claim involved here he's never been accused of anything of the sort and so he wants to explain the source of the funds and it's not like he hadn't been involved with moving Welton funds before the government's own allegations are that having nothing to do with these two bank accounts was that in the two years prior on behalf of Welton that my client had been involved in transporting funds to US banks and the amount of thirty five million dollars and a bunch of different banks those are all solace Welton funds those aren't these funds so it is not at all surprising that when he originally got involved in this case or originally had this interaction with law enforcement that he wanted to make it that this is these are funds from a legitimate business of well-established business 35 stores across northern Mexico that he has a long-standing relationship with and I'm sure you picked it up from the briefs but this this was a real problem the accumulation of these dollars is a real problem it had there was really no other way to do it and in fact my client had been robbed at gunpoint in his own facility at CSC because it's dangerous to have that many dollars around so he had to get him there you want to save any of your time I would but I'm happy to answer any other questions for my have these funds available to pay for a wall you can address that on I'll address that on rebuttal thank you your honor may it please the court my name is Monica Edelstein and I'm an assistant United States attorney from the District of Arizona I want to start with what is critical to the understanding of this case and that is the chronology of how the evidence came into the record before this court after the United States filed the complaint setting forth the basis for forfeiture consistently and throughout the beginning stages of this litigation including the under oath sworn depositions of these two claimants they stated unequivocally that Welton was the owner of the funds and more importantly that they themselves did not own these funds they made fake concessions that proved fatal to their case for standing and as litigants the government should be entitled to rely on as this court said in the case of u.s. be a hundred and thirty three thousand four hundred and twenty dollars also an asset forfeiture case preserving the integrity and the truth-seeking function of the judicial process is as important in civil as in criminal proceedings the case before your honors starts and ends with the depositions it is only after I agree with you that the contradictory statements and the concession that the funds belong to Welton is equivocal such that ownership is not established for summary judgment purposes but we're talking about summary judgment and standing to essentially proceed to trial on the case so how do those contradictory statements prove fatal to establishing a possessory interest for the reason your honor that within the Ninth Circuit the the Ninth Circuit has articulated in the US be vacant lands case that possession of mere legal title alone without exercise and control are not sufficient to establish a recognizable interest for standing purposes so possession alone has to be accompanied by some explanation in the case of I think it's a hundred and ninety one thousand some change there it was an issue of standing and possession accompanied by some explanation like I'm holding it for a friend would be enough to establish a possessory interest right so here you've got a situation where the account holders are stepping forward saying that I'm the claimant so they've got the possessory interest the Dominion control accompanied by some explanation as to how these funds came into their possession it's not it's not a very high standard so shouldn't that be enough to establish a possessory interest your honor the government's position is that they did not demonstrate by clear evidence that they did exercise Dominion and control and I would point to several examples as to why this was naked possession only without the proper evidence initially your honors these claimants disclaimed ownership completely and your honor the the case that you cited the 19,000 and change that out of the Western District of Virginia as well as the case USP thirty nine thousand five hundred fifty seven dollars out of the District of New Jersey both of these stand for the proposition that the defendants or the excuse me the claimants initial disclaiming of ownership of these funds proves fatal to their later contest content later contesting that they did in fact own these funds let me ask you this of counsel I I get the fact that there are conflicting statements but my recollection is that one of the things that they've never varied from was that they had to account for these funds that they belong to Welton and others and that they would have to pay them back now under Lujan and under article 3 constitutional standing the fact that they are potentially liable for this is a serious potential injury is it not why doesn't that help them establish at least prudential standing and unconstitutional standing well with respect to mr. Samaniego the the fact that he claims he's liable is in it comes in that hearsay post back affidavit that he states that he himself is liable there's no evidence on the record that established this arrangement there's no documentation for this arrangement and does our case law require something more than his declaration he says I'm liable for this it's true it comes from him but he's the one that's involved he's not quoting somebody else for the truth of a matter stated he's saying I am liable I have to respond to this that's not hearsay is it your honor the government would submit that it is hearsay since that it's a post back self-serving statement with no base with no no evidence to support that claim it's simply his statement that what evidence would he need to support that documentation with respect to the arrangement between himself and mr. solace between CSC and Welton and again mr. Samaniego himself is a minor owner of CSC I get that he obviously trusted him according to the evidence so so if you if you come from exam for example a do things on a handshake basis are you saying that in every case of such a culture that someone would lose a standing argument here in other words I trust you you know I want you to do this this is what's going to be done you're saying unless you have board resolutions and a long legal document you lose is that right your honor the United States position is that we have no problem with the compadre argument however it's the United States position that the compadre needed to make the claim in this case okay that's what I asked your opponent there so what you're saying is that if the compadre didn't back it up then in effect that part would be hearsay if you say it's what he said on the other hand if if mr. Samaniego says I am liable I am liable and common sense tells you if it's somebody else's money you are liable how do we deal with that oh your honor the United States would point to the case of all funds in account property futures it's a district southern district of Florida case I'm pretty controlling here isn't it not controlling your honor but instructive in the sense that it in that case the court found that it that unsubstantiated legal conclusions whether parroted by a party or by an expert as cited in the dependence I'm sorry the claimants reply brief as a matter of law create a genuine do not create a genuine issue effect necessary to defeat some judge dollars who's working for wealth and represents Welton says that the arrangement was that they once the money was handed over from Welton stores they were in the possession and control of CSC and that they had to pay them back so why isn't that sufficient to establish a possessory interest at least regardless of whether and I'm not sure that's contradictory of their statement that the funds were owned by Welton for example in our the definition of a possessory interest is where a explanation for e.g. that he is holding the item for a friend he will have standing so there's no documentation in that hypo it's just his explanation two points your honor that I would make to that first with respect to the solace declaration it the solace declaration explains how the funds came from Welton to CSC itself and now CSC essentially took possession of those funds it says speaks nothing as to how these particular claimants have possession of the funds that ultimately wake make their way to the two seized accounts in the United States it speaks to the arrangement that was between Welton and CSC at CSC in that location not the seized bank accounts at issue here with respect to the exercise of dominion control the case that your honor cited I near possession in and of itself with the explanation that I'm holding it for a front is insufficient within the Ninth Circuit that's I was reading from the Ninth Circuit case then the US versus 191 thousand nine hundred and ten dollars fortunately they don't use sense in these mere unexplained possession will not be sufficient however where a claimant asserts a possessory interest and provide some explanation of it e.g. that he is holding them for a friend he will have standing that's the quote and your honor the government would submit that there's absolutely no evidence on this record that that they were possessed they held it in for a friend and they exercised control of it sufficient to both warrant constitutional standing article 3 standing and prudential standing for example your honors these claimants that the reply sites transactions that these claimants conducted there's absolutely no evidence on this record whatsoever that Sam and Diego conducted any transactions with this account you're talking about some people who claim that they are liable they've stated that clearly they put this money in the fact they haven't made any use of the money there are a lot of people these days who don't have any use for money because you can't earn anything there's a zero negative interest rates in certain places they just want the money to be safe nothing wrong with that and I guess I'm my sense of due process is offended by the concept that the United States can seize a lot of money hundreds and hundreds of thousands of dollars based on the idea that these people who say that they're going to be held responsible for this money don't have standing and that it's based on some self-serving declaration that's some degree in the eye of the beholder is it not the order the forfeit ability of this money is not an issue for this court the issue is they don't have standing it's all over and then standing itself is paramount yes your honor they're dead without standing so we're deciding the case based on standing why shouldn't this issue of whether or not they have made a sufficient argument go back and let a fact finder like a jury make a determination whether or not they have met this burden rather than just have the money disappear into the government coffers to be used I'm sure wisely would your honor like me to continue I see my time is expired I just want to clarify one thing regarding the record we were talking earlier about contradictory statements as I understand the record contradictory statements go to ownership right there are declarations from the claimants explaining how they got the funds and the fact that they were supposed to eventually pay the funds back where their contradictory statements with regard to that so I'm distinguishing ownership versus possessory interest the United States would would state your honor that the the lack of a dominion control along with this lack this contradictory statement establishing firmly that they had a possessory interest in and of itself demonstrates that they had neither a possessory with the sufficient control as well as an ownership interest in that vein could you clarify your response to me as to why the sallis declaration doesn't suffice yes your honor the sallis declaration goes to the fact that the funds came from Welton and were housed by CSC yeah the the argument your honor is from the United States perspective is that there's no evidence on the record of how mr. Samaniego as a minor shareholder of CSC can exercise a controlling interest in CSC there is well this is declaration I'm sorry Samaniego says that that's you know he he's talking about his and CSC's dominion and control how they use the funds yes your honor and the case law with the United States versus Dupree United States versus all funds in the account property futures state that a shareholder of a corporation does not have standing to proceed on behalf of the corporation so the United States's argument is that mr. Samaniego as a 15% shareholder who was under the supervision of the primary owners of CSC is not in a position to assert a claim on behalf of CSC your position is even though the majority shareholder says I give him permission the fact that he's a 15% holder is enough to disqualify him from having any standing your honor he did not have authorization on this record from the majority shareholders of CSC declaration for the solace declaration relates to Welton your honor solace was a principal a part owner of Welton not CSC mr. Samaniego was a minor shareholder of CSC alone there is Welton and CSC are two separate entities okay any other questions okay very good thank you we'll have a think you have some time left thank you I just want to clarify a couple of a couple of points I think the solace declaration is obviously important to this case one thing that the court should be cognizant of is that solace is not just talking he's talking about how the funds get to CSC he's also talking about how the together is that clear in the document that it covers both Welton and CSC it's not both Welton and CSC it's Samaniego and CSC okay but but okay so you're saying so what I'm saying is that with that that that mr. solace is not drawing a distinction between CSC and Samaniego with respect to Samaniego's 15% ownership interest that is what the record that's what the record shows but he is also the manager in general manager of the company and there's not no evidence in fact if you read the expert report it's very clear that he runs the place and the fact that he is that the language of supervision is used I think is a is something that should be resolved from a fact finder arguably I'm under the supervision of my law partner you know I'm a part owner of my law firm arguably I'm under his supervision he's a part owner we we have let me ask you this if you had your druthers what would you ask this court to do I would ask this court to remand and for what and ask the judge Burns to do what well I think we enter an order that we've established standing on this order that standing has been established not send it back for a jury to make any yeah but our secondary position would be that a jury should resolve this question to the extent that there's fact issues that need to be resolved I do want to point out that the liability point that the court is is focused on you know that's an admission against interest so I don't think it should be can be deemed as hearsay I think that it should be deemed enough to establish the I'm out of time there is all of the cases that have to do with naked possession and no explanation there is no explanation we have more than explained how this arrangement worked thank you thank you both counsel appreciate the arguments in this case u.s. versus someone Diego is submitted we thank both counsel
judges: Fisher, M. Smith, Nguyen